UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YOSIF BAKHIT and KIYADA MILES,<br>Plaintiffs, | CIVIL ACTION NO.<br>3:13-CV-1049 (JCH) |
| v. | |
| SAFETY MARKINGS, INC., MARK KELLY, RAY VEZINA, PHIL BRININGER, JAMES CODY, JEFF PERRA, and TOM HANRAHAN,<br>Defendants. | JUNE 23, 2014 |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 21)**

Plaintiffs Yosif Bakhit and Kiyada Miles bring this action against their former employer, defendant corporation Safety Markings, Inc. ("Safety Markings"), and individual defendants Mark Kelly (president of Safety Markings), Ray Vezina (foreman), Phil Brininger (foreman), James Cody (superintendent), Jeff Perra (foreman), and Tom Hanrahan (lead foreman) (collectively, "the defendants").[1]  The Complaint claims that Safety Markings and the individuals named are each liable to each of the plaintiffs for the torts of intentional infliction of emotional distress and negligent infliction of emotional distress.  See Complaint ("Compl.") (Doc. No. 1) at 18–19.  It also claims that the defendants discriminated against the plaintiffs on the basis of race in violation

---

[1] The court notes that the caption in the plaintiffs' Opposition to the defendants' Motion to Dismiss (Doc. No. 26) names different defendants from those listed on the Complaint (Doc. No. 1) and in other filings, apparently substituting the name "Ray Velez" for "Ray Vezina" and omitting "Tom Hanrahan" entirely.   The court assumes that at present the parties remain the same as those originally named in the Complaint.

1

of 42 U.S.C. § 1981.  See id. at 16–18.  The defendants filed a Motion to Dismiss parts of Count I and the entirety of Counts II, IV, V, VI, VII, and VIII.  See Motion to Dismiss (Doc. No. 21); Memorandum in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") (Doc. No. 22); Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pls.' Opp.") (Doc. No. 26).  For the reasons that follow, the Motion to Dismiss is granted as to the claims for negligent infliction of emotional distress (Counts VII and VIII) and as to the retaliation claim in Count I (with leave to amend as to that claim) and is otherwise denied.

## I.  FACTS[2]

Bakhit is a dark-skinned Muslim immigrant from Sudan.  Compl. at ¶ 6.  Miles is a black American from Trumbull, Connecticut.  Id. at ¶¶ 9–10.  Safety Markings is a business that stripes and marks roadways.  Id. at ¶ 15.  Both Bakhit and Miles began working for Safety Markings in 2008.  Id. at ¶¶ 7, 11.

Throughout the course of their employment with Safety Markings, the plaintiffs have been subject to a hostile environment that has been rife with the use of racial and ethnic slurs and derogatory remarks and jokes.  Terms used included "n----r," "camel jockey," "bomber," and "terrorist."  Id. at ¶¶ 26–27.  At one point, when Miles, defendant Vezina, and two other employees (one of them black) were working on a job, the other black employee began to step out of the truck; Vezina drove the truck as the black employee hung on for nearly two blocks.  Id. at ¶ 46.  He then stated, "At least I can die knowing I dragged a black man from the back of my truck."  Id.  At another

---

[2] For the purpose of considering the defendants' Motion to Dismiss (Doc. No. 21), the court assumes the truth of the well-pleaded facts asserted in the Complaint (Doc. No. 1).

point, Vezina had Bakhit open a medicine bottle for him.  Id. at ¶ 58.  Complying, Bakhit pulled out the cotton ball from the bottle.  Id.  Vezina explained, "I just wanted to see [a] black man pick cotton."  Id.  Yet another time, Bakhit was at a gas station with defendant Ryan and others, when Ryan offered Bakhit a banana—"Here Yosif . . . . They are two-for-one"—comparing Bakhit to a non-human primate.  Id. at ¶ 62.  In the middle of painting a highway, defendant Brininger told Bakhit, "I should paint you white." Id.  At another point, Vezina intentionally sprayed Miles' arm white, pointing to it and stating, "That's the only way you are going to move up in the company."[3]  Id.

In response to these and similar occurrences, both Miles and Bakhit complained to their immediate supervisors and to Kelly, the company's president.  Id. at ¶¶ 33, 37, 73.  Despite these attempts to improve the situation by working with individuals at the company, the supervisors to whom they complained did not make positive changes to the working environment, and conditions did not improve.  See, e.g., id. at ¶¶ 34, 38, 65, 76.  Additionally, nineteen days after he filed a formal written complaint with Kelly, Bakhit discovered that his car's windshield had been smashed and reported it to the police and (through counsel) to Safety Markings, which responded that it would arrange for antidiscrimination training for its employees.  Id. at ¶¶ 74–75.

Despite receiving very favorable performance reviews, Bakhit never advanced beyond the lowest of six ranks for employees in the company.  Id. at ¶ 88.  Miles at one point advanced from the lowest to the next rank.  Id. at ¶ 89.  When Miles sought an additional promotion in December 2012, in front of other employees Kelly called him "stupid" and advised him that he was being demoted back to the lowest rank—to which

---

[3] The court has recited here just a few of the more egregious incidents alleged.

3

he was indeed demoted, and where he remains.  Id.  Meanwhile, white employees with similar or less experience have been given more favorable treatment.  Id. at ¶¶ 90–96.  White employees have also received unmerited comparatively favorable treatment in terms of the difficulty or desirability of the work they have been assigned and the guidance, training (and consequent opportunities for advancement), and actual promotions that they have received.  Id.

Faced with these and other torments from the defendants, Bakhit was eventually unable to return to work.  Id. at ¶ 77.  He made clear to Kelly that he wanted no further contact, but after a contested unemployment hearing in 2013, Kelly continued to contact Bakhit repeatedly.  Id. at ¶¶ 79–80.

## II.   STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), a court takes all of a complaint's well-pleaded "the factual allegations of the complaint to be true and draw[s] all reasonable inferences in the plaintiff's favor."  Warren v. Colvin, 744 F.3d 841, 843 (2d Cir. 2014).  Dismissal of a claim is appropriate if, despite this favorable reading, the complaint fails to allege "enough facts to state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  The requirement to allege "facts" means that "bald assertions" and "merely conclusory allegations" do not suffice.  Jackson v. Cnty. of Rockland, 450 F. App'x 15, 19 (2d Cir. 2011); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint is "plausible on its face" if the facts that the plaintiff pleads "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  That is, the complaint must raise "more than a sheer possibility that a defendant has acted

unlawfully."  Id.  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.

## III. DISCUSSION

### A. Intentional infliction of emotional distress (Connecticut common law), Counts V and VI

The plaintiffs bring claims for intentional infliction of emotional distress (IIED) under Connecticut common law against all of the defendants in Counts V (Bakhit) and VI (Miles) of the Complaint.  The defendants argue that these counts fail to state cognizable claims because the conduct alleged is not sufficiently "extreme and outrageous."  Defs.' Mem. at 13–14.  The court disagrees and thus denies the defendants' motion as to these claims.

A plaintiff alleging IIED must establish "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe."  Petyan v. Ellis, 200 Conn. 243, 253 (1986) (quoting Murray v. Bridgeport Hosp., 40 Conn. Sup. 56, 62 (1984)) (internal quotation marks omitted).

The only dispute is as to the second element—whether the conduct was sufficiently "extreme or outrageous."  As a preliminary matter, the court notes that the defendants cite to Connecticut Superior Court cases drawing inferences from Perodeau v. City of Hartford, 259 Conn. 729, 757 (2002), to argue that the standard for "extreme and outrageous" conduct is heightened in the employment law context.  See Defs.'

5

Mem. at 14–17 (citing Fogarty v. Forman Sch., LLICV106002940S, 2011 WL 1288250 (Conn. Super. Ct. Mar. 10, 2011) and Wilk v. Abbott Terrace Health Ctr., Inc., CV065001328S, 2007 WL 2482486 (Conn. Super. Ct. Aug. 15, 2007)); Pls.' Opp. at 15. The court doubts whether this kind of inference is justified, and is of the view that imposing a heightened standard on IIED claims in the employment context would double count the policy concerns that the Connecticut Supreme Court expressed in Perodeau.  The Court there relied on those concerns to justify its conclusion that NIED claims do not apply to the employment context except in the context of termination. However, the Perodeau Court did not state that the burden for making out the "extreme and outrageous" prong of IIED claims was any higher than in other contexts.  For the reasons that follow, the allegations here are sufficiently extreme to satisfy the court that the answer to this question does not affect the result at this point in this case.

    The Complaint is replete with abhorrent and derogatory racial epithets and other abusive language and practices.  The plaintiffs allege use of slurs such as "n----r" (which was "widespread and prevalent," Compl. at ¶ 26, and among some individuals even "constant[]," id. at ¶ 35), "camel jockey," "bomber," "terrorist," and "spic" to describe various people of color, id. at ¶ 26, and other abhorrent language and practices that the court is reluctant to repeat. The defendants, plaintiffs say, also executed numerous "jokes" such as having Bakhit open an aspirin bottle so that an onlooker could say, "I just wanted to see black man pick cotton."  Id. at ¶ 58.  In another instance,

> Mr. Miles was working with two other employees, one of whom was African American, under Foreman Ray Vezina.  The African American man attempted to exit the truck when Mr. Vezina began to accelerate, causing the African American man to fall and get dragged nearly two blocks down the road.  After

6

stopping the vehicle, Mr. Vezina stated, "At least I can die knowing I dragged a black man from the back of my truck." Id. at ¶ 46.  Yet another time, "Mr. Vezina asked Mr. Miles to [join him for] spraying detail . . . .  While spraying, Mr. Vezina intentionally sprayed Mr. Miles' forearm, pointed to the white on his arm and stated, 'That's the only way you are going to move up in the company.'"  Id. at ¶ 60.

None of the cases that the defendants cite contains allegations of race discrimination.  Nor has the Supreme Court of Connecticut directly addressed the question of what is sufficiently "extreme and outrageous" in the context of race discrimination.  In Simms v. Chaisson, the Court emphasized the importance of the "public policy goal [of] 'deterr[ing] acts of intimidation and harassment based on bias or bigotry.'"  277 Conn. 319, 336 (2006).  The Simms Court relied on this goal to uphold a substantial award for attorney's fees even though a jury had merely awarded nominal damages for IIED where the defendants had tormented the plaintiffs based on race. Id. at 332–37.  And "[s]everal Connecticut Superior Court cases have found racial slurs, or comments about national origin to be extreme and outrageous conduct."  Burr v. Howell, CV020464225S, 2003 WL 21675848 (Conn. Super. Ct. June 25, 2003) (collecting cases).  In the court's view, Bakhit has satisfied his burden of pleading facts sufficient to state a claim for IIED "'that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557)).

    B.    <u>Negligent infliction of emotional distress (Connecticut common law), Counts VII and VIII</u>

The plaintiffs also bring claims for negligent infliction of emotional distress (NIED) under Connecticut common law.  These are in Counts VII (Bakhit) and VIII (Miles) of

7

the Complaint.  The defendants argue that here, too, the plaintiffs have failed to state any claim in these counts.  Miles concedes that he has not made out an NIED claim; the court thus dismisses the claim in Count VIII.  The court agrees with the defendants as to Bakhit, and thus grants the defendants' Motion as to the claim in Count VII.

To prevail generally on a claim for NIED, a plaintiff must establish that: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress."  Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003).

In addition to the elements stated in Carrol, for NIED claims in the employment context Connecticut law requires that the relevant "conduct occur[ ] in the termination of employment."  Perodeau v. City of Hartford, 259 Conn. 729, 763 (2002).  The defendants argue that Bakhit fails to state an NIED claim because "there is no allegation that the defendants engaged in unreasonable conduct during the termination process."  Defs.' Mem. at 19.  The court agrees: the rule in Perodeau renders Bakhit's allegations in Count VII—practically all of which are outside the context of the termination process—insufficient to state a claim for NIED under Connecticut law.  Furthermore, assuming arguendo that the one potentially relevant allegation—that, after Bakhit left, Kelly "repeatedly attempted to contact him directly, asking whether he was coming back," see Compl. at ¶ 80—falls within the termination process as a matter of law, the court concludes that this allegation does not "allow[ ] the court to draw the reasonable inference that [any] defendant is liable for" NIED.  Iqbal, 556 U.S. at 678.

8

C.  Discriminatory adverse employment action (42 U.S.C. §§ 1981, 1981a), Counts I, II, III, and IV

Bakhit and Miles have combined several purported claims under sections 1981 and 1981a of title 42 of the United States Code into Counts I through IV of the Complaint.  All of these counts are against all defendants; Bakhit asserts Counts I and II and Miles asserts Counts III and IV.  The defendants move to dismiss all of these Counts to the extent they are based on section 1981a, arguing that because the plaintiffs did not bring Title VII claims, and section 1981a only provides additional remedies to Title VII claimants, there can be no claim under section 1981a.  The plaintiffs concede the inapplicability of section 1981a and agree to "amend their complaint and withdraw any mention of § 1981a as a basis for relief."  Pls.' Opp. at 4.  The court directs that they do so.[4]

The defendants also move to dismiss some of the claims that Bakhit combines in Count I, arguing that Bakhit fails to state a claim for constructive discharge, retaliation, or failure to promote.  Bakhit first objects that the defendants "cannot . . . seek partial dismissal of a count on a motion to dismiss."  Id.  He is incorrect.  A "claim" is "[t]he aggregate of operative facts giving rise to a right enforceable by a court."  Black's Law Dictionary 281–82 (9th ed. 2009).  A count is a mere organizational tool.  See id. at 401–02 (defining "count").

Traditionally, in each count of a complaint, a plaintiff states the facts constituting his legal right to relief of a given kind, and separates out different kinds of legal rights

---

[4] On a related note, the court observes that the defendants' Motion seeks to dismiss in their entirety Counts II and IV of the Complaint.  The only basis on which to do so would be the defendants' argument regarding section 1981a.  But these Counts claim section 1981 as a basis as well, and the

9

into different counts. We are past the days of code pleading and the concomitant construction of complaints against the plaintiff. See Construction of Pleadings, 5 Fed. Prac. & Proc. Civ. § 1286 (3d ed.). While messy pleading sometimes makes it quite difficult for courts and litigants to understand exactly what claims for relief a plaintiff actually states, the courts read pleadings so as to do justice. Fed. R. Civ. P. 8(e). Accordingly, the court construes the Complaint to allege that Bakhit (Counts I and II) and Miles (Counts III and VI) are each entitled to relief provided by section 1981 of title 42 of the United States Code, although each plaintiff states several different claims under that section. Specifically, in the aggregate these Counts purport to state section 1981 claims for, at least, (1) constructive discharge, (2) retaliation, (3) failure to promote, and (4) hostile work environment. It is not clear to the court whether any other claims are stated. For the sake of clarity to all parties and the court and fair notice to the defendants, the court directs that the plaintiffs amend the Complaint to enumerate in distinct counts each kind of section 1981 claim that each defendant states. This Ruling addresses the subjects of the defendants' Motion to Dismiss, to wit Bakhit's section 1981 claims for constructive discharge, retaliation, and failure to promote.

The court will discuss the elements of each disputed claim below. However, the basic section 1981 framework, much like other antidiscrimination statutes, provides that a plaintiff establishes a prima facie claim by alleging that a defendant (1) intentionally (2) committed one of the acts of discrimination prohibited by the statute (3) because of the plaintiff's membership in a protected class. See Brown v. City of Oneonta, 221

---

defendants do not challenge the plaintiffs' reliance on section 1981.

F.3d 329, 339 (2d Cir. 1999); Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). In considering the pending Motion to Dismiss, the court is mindful that a complaint need merely "nudge[ ] [the plaintiffs'] claims of invidious discrimination across the line from conceivable to plausible." Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (quotation marks omitted).

### 1. Constructive discharge

Bakhit brings a claim for constructive discharge against the defendants. The defendants argue that he fails to state a claim against any defendant because, in effect, he suffered so long that, despite his allegations, things must not have been very bad. They also argue that he has no claim against defendant Kelly because, as the Complaint alleges, after Bakhit left, Kelly contacted him to ask whether he was coming back. Compl. at ¶ 80. The court finds the defendants' arguments unpersuasive and denies the Motion as to this claim.

"An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily," and does so "on the basis of [the employee's] membership in a protected class." Terry v. Ashcroft, 336 F.3d 128, 151–52 (2d Cir. 2003) (Title VII, ADEA, ERISA context), as quoted in Miller v. Praxair, Inc., 408 F. App'x 408, 410 (2d Cir. 2010) (Title VII and Connecticut law context).

The defendants first argue that Bakhit fails to allege that his working conditions were sufficiently intolerable to constitute constructive discharge because "he endured the alleged constant and unceasing racially offensive conduct for over four years before

11

deciding to leave." Defs.' Mem. at 9. The defendants cite no case law in support of this argument, and the court finds it unpersuasive. The Complaint, fairly read, describes increasingly abhorrent working conditions. See Compl. at ¶¶ 62–80. However, even were conditions for an employee to remain at a roughly stable level of intolerability, the court doubts whether a reasonable person might not eventually find the conditions "so difficult or unpleasant" that he would "fe[el] compelled to resign." Serricchio v. Wachovia Secs. LLC, 658 F.3d 169, 185 (2d Cir. 2011); cf. Phillips v. Bowen, 278 F.3d 103, 110 (2d Cir. 2002) (noting, in the context of First Amendment retaliation by an employer, that while individual events might not be actionable "when viewed in isolation, a finder of fact looking at them collectively over a period of several years reasonably could find that they rise to the level of actionable harm").

The defendants also argue that the Complaint fails to state a claim for constructive discharge specifically against President Mark Kelly. They cite to a decision stating that a plaintiff bringing this kind of claim "must at least demonstrate that the employer's actions were 'deliberate' and not merely 'negligent or ineffective.'" Petrosino v. Bell Atl., 385 F.3d 210, 230 (2d Cir. 2004) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000)) (alterations from original omitted). This principle refers only to the ultimate burden on the plaintiff—not to pleading standards. The court is satisfied that Bakhit's allegations about Kelly and those whom Kelly supervised—especially the allegation that the kinds of hostility to which Bakhit was subjected never abated over several years despite multiple complaints, see Compl. at ¶¶ 33, 37, 65, 73, and more generally ¶¶ 26–77—sufficiently establish the plausibility of deliberate and not merely negligent or ineffective action.

The defendants rest their argument entirely on Bakhit's allegation that, after he left, "Mr. Kelly repeatedly attempted to contact him directly, asking whether he was coming back." Compl. at ¶ 80. Read in a light favorable to the plaintiff, this statement does not undermine the constructive discharge claim against Kelly. This allegation says nothing concrete about Kelly's motivations during the period of alleged harassment. At most, this allegation's implications about Kelly's motivations is ambiguous, which when read in a light favorable to Bakhit leaves the claim intact. See Hoover v. Ronwin, 466 U.S. 558, 587 (1984).

2. Retaliation

Bakhit alleges that, nineteen days after he made a formal complaint through counsel to Safety Markings about certain discriminatory treatment that he was suffering, he faced unlawful retaliation in violation of section 1981 when his windshield was smashed. See Compl. at 72–75. To establish a prima facie case of retaliation under section 1981, the plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy v. City of Rochester, 241 F.3d 279, 283 (2d Cir. 2001) (retaliation in Title VII context).

Pointing to the most obvious kind of causation necessary to plead a retaliation claim, the defendants do not challenge Bakhit's allegations about why the perpetrator committed this act, but only whether the defendants did (or caused) the act at all. Defs.' Mem. at 10–11.

Bakhit has failed to plead sufficient facts to state a retaliation claim. A plaintiff's

13

allegations must not merely be "consistent with" but also "plausibly suggest" unlawful behavior. Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 567, 570 (2007)). Bakhit has not alleged facts plausibly suggesting that a coworker smashed, or his employer caused the smashing of, his windshield. Bakhit merely states, "On January 1, 2013, less than three weeks after his [formal, written complaint to his employer], Mr. Bakhit's front windshield was smashed with a rock. He reported it to the police and it was also reported to defendant's counsel." Compl. at ¶ 74. Presumably Bakhit's car was parked when this window-smashing occurred, but Bakhit does not allege where his car was parked: whether at home or in his employer's parking lot; whether the vandalism occurred at day or night; whether, if not at work, the car was in a place where his employer or employees might have known how to find it. Although Bakhit need not allege the explicit fact that his employer or a coworker caused the smashing, he must at least plausibly suggest that it is more likely that defendants, rather than mere bad luck, were the cause of the vandalism.

### 3. Failure to promote

Bakhit claims that the defendants left him unpromoted in violation of section 1981. The defendants offer that "to the extent" Bakhit's claim "is based on his religion, not his race," it should be dismissed. Defs.' Mem. at 11. The court is satisfied that Bakhit has stated a cognizable discrimination claim under section 1981 and accordingly denies the Motion to Dismiss as to this claim.

The elements of a prima facie case of discriminatory failure to promote under section 1981 are: (1) membership in a protected class; (2) seeking and being qualified for an open job; and (3) "suffer[ing] an adverse employment action" (4) in "circum-

stances . . . permit[ting] an inference of discrimination" on the basis of membership in that protected class. Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004) (stating standard under Title VII); see Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000) ("'In analyzing § 1981 claims, we apply the same standards as in Title VII cases.'" (quoting Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 347 n.2 (7th Cir. 1999))); Carrero v. N.Y.C. Hous. Auth., 890 F.2d 569, 575 (2d Cir. 1989) (noting that section 1981 protects individuals from discrimination "on account of [their] race, ethnicity, or national origin").

The defendants challenge Bakhit's claim on the fourth prong. Specifically, they argue that, while Bakhit may state a claim for discrimination based on his religion, such a claim is not cognizable under section 1981: only claims for discrimination on account of race are. Bakhit concedes that discrimination on the basis of religious affiliation is not prohibited under section 1981. Pls.' Opp. 13–14. While some allegations in the Complaint may suggest religious discrimination, however, see, e.g., ¶¶ 47–51, 53, Bakhit's allegations as a whole unquestionably indicate animus based on Bakhit's race that stands independently of any animus solely based on Bakhit's religious affiliation. For this reason, the court denies the motion as to Bakhit's claim for failure to promote.[5]

## IV.   CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 21) is

---

[5] Further, any allegations suggesting discrimination on the basis of religion may still contribute to a claim for discrimination under section 1981 as long as they are based on discrimination against Bakhit that is, at the least, not solely based on Bakhit's religion. Whether discrimination that outwardly appears directed at a person for his religion is in fact motivated by his race, ethnicity, ancestry, or national origin can be difficult to tease out. See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987). Given the allegations in the Complaint, the court is satisfied that Bakhit does not at this stage rely solely, if at all, on a theory of religious discrimination in bringing his claims under section 1981.

hereby **GRANTED** in part and **DENIED** in part.   The court dismisses both plaintiffs' common-law claims for negligent infliction of emotional distress (Counts VII and VIII) and Bakhit's retaliation claim arising under section 1981 (part of Counts I and II). Furthermore, as the parties agree that the plaintiffs have stated no claims for relief under section 1981a, the court dismisses such claims as well.

What remains are both plaintiffs' IIED claims against all defendants (Counts V and VI); Bakhit's other section 1981 claims, including for constructive discharge, failure to promote, and hostile work environment (the remainder of Counts I and II); and all of Miles' section 1981 claims, including for failure to promote and for hostile work environment (Counts III and IV).

The plaintiffs are directed to file an Amended Complaint within 21 days from the date of this Ruling's entry.   The court directs that they enumerate the remaining claims in separate counts and that they incorporate within the corresponding count the allegations necessary to obtain punitive damages as to such legal claims, to the extent that they have a basis to do so.   Unless the plaintiffs amend to clarify that they intended to assert claims under section 1981 beyond those which the court has just enumerated, the court will assume that its list exhausted all bases upon which the plaintiffs seek relief under section 1981.

**SO ORDERED.**

Dated at New Haven, Connecticut this 23rd day of June, 2014.

/s/ Janet C. Hall _____
Janet C. Hall
United States District Judge
