```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

YOSIF BAKHIT and               :
KIYADA MILES                   :
                               :
                               :
v.                             :        CIV. NO. 3:13CV1049 (JCH)
                               :
SAFETY MARKING, INC.,          :
MARK KELLY, RAY VEZINA,        :
PHIL BRININGER, JAMES CODY,    :
TOM HANRAHAN, and JEFF PERRA   :
```

RULING ON PLAINTIFFS' MOTION FOR INSPECTION [DOC. #42]

Pending before the Court is a motion by plaintiffs Yosif Bakhit and Kiyada Miles to permit the inspection of certain mobile phones provided and/or paid for by defendant Safety Marking, Inc. to certain of its employees. [Doc. #42]. Defendants oppose plaintiffs' motion. [Doc. #53]. On May 12, 2014, the Court held oral argument on the pending motion for inspection. Following oral argument, plaintiffs submitted a letter brief in support of their position [Doc. #54], to which defendants responded [Doc. #55]. For the reasons that follow, plaintiffs' motion for inspection [Doc. #42] is **DENIED** without prejudice to re-filing.

A. BACKGROUND

Plaintiffs bring their complaint pursuant to 42 U.S.C. §§1981 and 1981a, alleging race discrimination and hostile work environment on the basis of race. [Compl., Doc. #1]. Plaintiff Bakhit also alleges constructive discharge and retaliation. [Id.] Plaintiffs each allege negligent and intentional

infliction of emotional distress. [Id.].[1]

Unless otherwise noted, the Court derives the following factual background from the allegations in the complaint. Mr. Bakhit, a "dark skinned Muslim of Sudanese decent," began working for defendant Safety Marking, Inc. in 2008. Plaintiffs allege that throughout Mr. Bakhit's employment, Safety Marking tolerated and ignored on a continuing basis a hostile environment for persons of color. For example, there was allegedly widespread use of derogatory race-based references, racist jokes and comments.

Plaintiffs allege that it was "common practice" among Safety Marking's foreman to share racist texts and jokes via cell phone. [Doc. #42-3, Kidya Miles Aff., ¶11]. Plaintiffs allege that defendant Ray Vezina sent a racist text message to plaintiff Yosif Bakhit [Compl., Doc. #1, ¶¶67-68], and showed Safety Marking employees racist jokes displayed on his smart phone [Id. at ¶62]. Plaintiff Kidya Miles provided an affidavit in support of the motion for inspection, and attests, inter alia, that he saw racist text messages on an employee's cell phone, and saw racist images displayed on defendant Vezina's cell phone. [Doc. #42-3, Kidya Miles Aff., ¶¶3,5].

Plaintiffs seek to recover data from 2008 through the

---

[1] On June 23, 2014, Judge Hall granted in part and denied in part defendants' motion to dismiss. Judge Hall dismissed both plaintiffs' common-law claims for negligent infliction of emotional distress (Counts VII and VIII), and Bakhit's retaliation claim under section 1981 (part of Counts I and II). Judge Hall also dismissed claims brought pursuant to section 1981a, as the parties agreed that plaintiffs stated no claim for relief under such section. Plaintiffs have been ordered to file an amended complaint within 21 days of the ruling on the motion to dismiss. [Doc. #70].

present from the cell phones of the following Safety Marking employees: Mark Kelly, Ray Vezina, Phil Brininger, James Cody, Jeff Perra, Tom Hanrahan, Jason Simpson, Ray Ryan, Chris Steffens, and Rich Mucherino.[2] Plaintiffs seek to obtain "any and all texts, emails, or other electronically stored information that are stored or were deleted from the cell phone or web sites accessed that are derogatory, disparaging, manifest a bias, or a discriminatory (sic) on the basis of race, ethnicity, color, or national origin." [Doc. #42-1, 4]. Plaintiffs state that the information retrieved "would also include information concerning the source of each item, the date(s) the item was created or accessed, and the destination of each text or email ("metadata")." [Id.].

On March 4, 2014, the individual defendants received discovery requests seeking authorization to perform the proposed imaging and data retrieval and to retrieve phone call and text records from the individuals' cellular service providers. [Doc. #53, 3; Doc. #53-3]. The individual defendants objected to inspection of the cell phones, but agreed to authorize retrieval of phone and text records from their cellular service providers. [Doc. #53, 3; Doc. #53-4].

**B. LEGAL STANDARD**

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery.

---

[2] At oral argument, plaintiffs stated at this point they would only pursue the motion on the individuals named as defendants: Mark Kelly, Ray Vezina, Phil Bringer, James Cody, Tom Hanrahan, and Jeff Perra.

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

As to the discovery of electronically stored information, Rule 34(a) provides that, "A party may serve on any other party a request within the scope of Rule 26(b) [] to produce and permit the requesting party or its representative to inspect, copy, test, or sample any… electronically stored information…" Fed. R. Civ. P. 34(a)(1). "This right to information, however, is counterbalanced by a responding party's confidentiality or privacy interests. A party is therefore not entitled to a routine right of direct access to a party's electronic information system, although such access may be justified in some circumstances." Genworth Fin. Wealth Mgmt., Inc. v. McMullan, 267 F.R.D. 443, 446 (D. Conn. 2010) (citing Notes of Advisory Committee on 2006 Amendments; internal quotations omitted).

C. **DISCUSSION**

Plaintiffs argue they are entitled to inspect and image the cell phones of the individual defendants under the broad scope of discovery, and in light of the allegations in the Complaint and Miles's affidavit. Plaintiffs further contend that the information sought is critical evidence to their case. Defendants submit two arguments in opposition. First that the

4

Rules do not favor intrusive inspection of personal electronic devices, particularly when a request is not limited, and second, that inspection should not be allowed where plaintiffs have not explored other options to obtain this information.[3]

Plaintiffs propose a "procedure" for the inspection of the cell phones. Plaintiffs anticipate the imaging and data retrieval will require five to ten days to complete. Plaintiffs, through counsel, intend to have a "data recovery service" conduct the imaging and data retrieval. This third-party vendor would then disclose all responsive records, including metadata, to defendants' counsel, who would have ten (10) days to conduct a privilege and responsiveness review. Thereafter, plaintiffs propose submitting for an <u>in camera</u> review any records defendants object to producing.

Although the information plaintiffs seek may be relevant to their claims, on the current record, the Court finds that the request as framed is overly broad and too intrusive for this stage of discovery. <u>Contra</u> <u>Freres v. Xyngular Corp.</u>, No. 2:13-cv-400-DAK-PMW, 2014 WL 1320273, at *4-5 (D. Utah March 31, 2014) (granting motion to compel inspection and copying of plaintiff's cell phone where defendant sought "narrow category of information."). Indeed, plaintiffs have failed to demonstrate that they have been unable to obtain similar information through other discovery methods. <u>Contra</u> <u>Genworth</u>, 267 F.R.D. at 445-47

---

[3] Defendants also argue that Safety Marking cannot compel non-party employees to sign authorizations to access and inspect their personal mobile devices. [Doc. #53, 9]. However, in light of plaintiffs now limiting their request to only the named individual defendants, this argument is moot.

(granting motion to compel defendants to submit computers and electronic media devices to forensic imaging and examination by a neutral court-appointed forensic expert where, <u>inter</u> <u>alia</u>, plaintiff demonstrated nexus between plaintiff's claims and its need to obtain a mirror images of the computer's hard drive, and "exhaustively established that forensic imaging by a neutral expert is the only way that the plaintiff will be able to secure the electronic data to which it is entitled."). Moreover, plaintiffs have yet to see what information the authorizations directed to the individual defendants' cellular service providers will yield.  With respect to defendants Kelly and Cody, plaintiffs have failed to present evidence, or even allegations, connecting them to the alleged conduct committed via cellular phone. Until plaintiffs present the Court with evidence of their participation, the Court is not inclined to permit inspection of Messrs. Cody and Kelly's cell phones.

    The implication of the individual defendants' privacy interests in the data stored on their cell phones also persuades the Court to deny plaintiffs' motion. This conclusion is further reinforced by the recent Supreme Court ruling in <u>Riley v. California</u>, Nos. 13-132 and 13-212, 573 U.S. __ (June 25, 2014), which recognized, albeit in the criminal context, the privacy concerns implicated by the modern cell phone. As Chief Justice Roberts, writing for the Court noted, the modern cell phone's immense storage capacity, "has several interrelated consequences for privacy. First, a cell phone collects in one place many

distinct types of information – an address, a note, a prescription, a bank statement, a video – that reveal much more in combination than any isolated record. Second a cell phone's capacity allows even just one type of information to convey far more than previously possible." Id. at 18. The Supreme Court further recognized that, "[a]lthough the data stored on a cell phone is distinguished from physical records by quantity alone, certain types of data are also qualitatively different." Id. at 19. In this regard, the Supreme Court points to an internet search and browsing history that may reveal an individual's private interests and concerns, such as "symptoms of disease, coupled with frequent visits to WebMD." Id. Indeed, this is precisely the information that may be implicated by plaintiffs' search of the individual defendants' cell phones and with what the Court takes issue.

Accordingly, on the current record, the Court **DENIES** plaintiffs' motion for inspection without prejudice to re-filing. In this regard, if plaintiffs re-file the motion, plaintiffs are encouraged to use other discovery devices to narrow the scope of their requested search and inspection of the cell phones. This includes narrowing the requests in both temporal and substantive scope, as well as limiting the number of individuals' phones to be searched.[4]

---

[4] It further appears that the only individual defendants with cell phones provided by Safety Marking are Messrs. Kelly and Cody. See plaintiffs' reply [Doc. #54], and defendants' sur-reply [Doc. #55].

**D. CONCLUSION**

Accordingly, plaintiffs' motion for inspection [Doc. #42] is **DENIED** without prejudice to re-filing. This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 26th day of June 2014.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE