## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| YOSIF BAKHIT and KIYADA MILES, | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:13-CV-1049 (JCH) |
| | : | |
| v. | : | |
| | : | |
| SAFETY MARKING, INC., MARK KELLY, | : | |
| RAY VEZINA, PHIL BRININGER, JAMES | : | |
| CODY, JEFF PERRA, and TOM | : | |
| HANRAHAN, | : | |
| Defendants. | : | JULY 1, 2015 |
| | : | |

### RULING RE: DEFENDANTS' MOTIONS FOR
### SUMMARY JUDGMENT (Docs. No. 124–33)

Defendant Safety Marking, Inc. ("Safety Marking") is a company in the business of painting lines on pavement (e.g., parking space borders, lane lines). Safety Marking employed plaintiff Yosif Bakhit, a dark-skinned Muslim of Sudanese origin, from spring 2008 of until January 2013. Affidavit of Yosif Bakhit ("Bakhit Aff.") (Doc. No. 157-3) ¶¶ 4, 81. It employed, and has continued to employ, plaintiff Kiyada Miles, a black man of Jamaican descent, since spring of 2008. Affidavit of Kiyada Miles ("Miles Aff.") (Doc. No. 157-4) ¶ 3. In this case, Bakhit and Miles sue Safety Marking as well as Mark Kelly, its President, Local Rule 56(a)1 Statement of Undisputed Facts in Support of Defendants' Motions for Summary Judgment Against Plaintiffs ("L.R. 56(a)1 Stmt.") (Doc. No. 134) ¶ 9 (admitted by plaintiffs), and five foremen who supervised crews of Safety Marking workers, see Bakhit Aff. ¶ 7, under several legal theories. The plaintiffs' basic contention is that the individual defendants, motivated by racial animus, engaged in a variety of conduct against them and that, as a consequence, they suffered damages. See Amended Complaint (Doc. No. 78). They seek to hold all defendants

1

liable under theories of intentional infliction of emotional distress ("IIED") under Connecticut law (Counts XIII and XIV) and, under section 1981, title 42 of the United States Code, creating a racially hostile work environment (Counts I and II).   They also bring claims under section 1981 against Safety Marking alone for: failure to train (Counts III and IV); failure to promote, or demotion (Counts V and VI); pay discrimination (Counts VII and VIII); less desirable work assignments (Counts IX and X); and (Bakhit only) constructive discharge (Count XI).  Bakhit did once, but no longer does, pursue a claim for retaliation under section 1981 (Count XII).[1]  The plaintiffs seek declaratory and injunctive relief, compensatory and (as to the federal discrimination claims) punitive damages, and reasonable attorney fees and costs.

The defendants in this case have filed ten Motions (Docs. No. 124–133) that, taken as a whole, argue that all defendants are entitled to summary judgment on every one of the plaintiffs' claims.

Summary judgment for a defendant as against a plaintiff is appropriate on any claim as to which no reasonable jury could find in favor of a plaintiff, i.e., where there is no genuine dispute as to any issue of fact material to the adjudication of the claim and the undisputed facts require a finding in favor of the defendant.  See O'Hara v. Nat'l Union Fire Ins. Co., 642 F.3d 110, 116 (2d Cir. 2011).

The court has reviewed all voluminous pleadings filed by the parties with respect to the pending Motions.[2]   Having done so, it concludes that this case is not one that is

---

[1] See Plaintiffs' Opposition to Defendants' Motions for Summary Judgment ("Opposition" or "Opp.") (Doc. No. 157) at 70.  The Motion for Summary Judgment as to this claim (Doc. No. 126) is thus denied as moot.

[2] Excluding tables of contents and other non-substantive portions, the defendants' ten Memoranda in Support of the Motions for Summary Judgment total well over 300 pages.  These filings

amenable to disposal on a summary judgment.  The admissible evidence in the record, including what is proffered by the plaintiffs and described in their Opposition and what is admitted by the defendants, is sufficient to establish that a genuine issue of material fact exists as to each element of their claims and, where the defendants raise affirmative defenses, as to at least one element of each such affirmative defense.[3]

For example, the defendants admit as fact that Safety Marking was "in general a blue collar workplace environment in which a degree of racial or ethnic humor and slang was tolerated," and concede that the evidence supports the conclusion that "discussion[s] about climbing trees, buying bananas on sale or even a couple of inapproporiate jokes" occurred.  Memorandum in Support of Motion for Summary Judgment (Doc. No. 129-1) at 24–25.  They nonetheless contend that the evidence of "racial or ethnic humor" is insufficient to support IIED or hostile work environment claims.  Id. at 24.  This characterization—which is reflective of the defendants' papers as a whole—seriously understates the evidence of inappropriate conduct and of consequent suffering proffered by the plaintiffs.  And, while the evidence proffered by

---

contain numerous verbatim (or, far worse, near-verbatim) duplication of arguments and statements of facts.  Perhaps the defendants wished to evade Local Civil Rule 7(a)2's requirement that, "[e]xcept by permission of the Court, briefs or memoranda shall not exceed forty (40) . . . pages."  This ingenious approach multiplied not only the words that the court was required to review by 2, 4, or more times, but (unsurprisingly, the court hopes) also the number of trees felled in printing and the amount of time expended in reviewing these filings—and by similar factors.  The court hopes, at least, that defense counsel did not also intend to ask for correspondingly multiplied fees from its clients.  In the future, counsel is advised to simplify filings by using consolidated memoranda or the venerable tool known as the "cross reference."

[3] This conclusion is without regard to the inadmissible parts of what the plaintiffs offer.  Bakhit and Miles come forward with some statements that do not reflect evidence admissible at trial.  Some such statements are inadmissible hearsay (e.g., statements by Bakhit or Miles that another employee reported to them what one of the defendants had done—to the extent this is offered to prove what the defendants had in fact done, rather than merely for Bakhit or Miles' state of mind), and others offer no foundation (e.g., statements by Miles or Bakhit that they simply were "aware of" some event or action by one of the defendants).

each plaintiff directly as to the severe emotional distress that he allegedly suffered is sufficient on its own, "the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed."  Restatement (Second) of Torts § 46 cmt. j (1965).  The evidence raised is more than sufficient to support the plaintiffs' claims for IIED and hostile work environment.

For another example, the defendants somehow contend that the plaintiffs have no evidence that they subjectively perceived their work environment as hostile.  See, e.g., Memorandum in Support of Motion for Summary Judgment (Doc. No. 128-1) at 19–21.  The evidence is plainly to the contrary.  See Bakhit Aff. ¶¶ 78 (conduct was "racist" and "abusive"), 79 (Bakhit "broke down in front of a co-worker"); Miles Aff. ¶¶ 52 (Miles "expressed [his] frustration to numerous employees about the offensive behavior"), 53–56 (Miles implies that he wanted to make complaints and felt abused when he states that several coworkers "warned" him that, inter alia, "if [he] compained, [he] would be forced out").

The defendants also seem to contend that any evidence that Bakhit was constructively discharged is rendered a nullity because, for example, Safety Marking's president wrote to him indicating that Bakhit was welcome at work and that he looked forward to seeing Bakhit again soon, and, separately, because Bakhit made representations suggesting an intention to return to work.  See, e.g., Defendants' Reply Brief to Plaintiffs' Opposition to Defendants' Motions for Summary Judgment (Doc. No. 165) at 8.  This evidence may be relevant to the question whether Safety Marking "intentionally create[d] an intolerable work atmosphere that force[d Bakhit] to quit involuntarily."  Whidbee v. Garzarelli Food Specialties, 223 F.3d 62, 73 (2d Cir. 2000);

see id. at 74 (fact that employer "demonstrated an interest in retaining the plaintiffs" tends to disprove employee's constructive discharge claim).  However, it does not eliminate the substantial evidence that Bakhit proffers, and which is sufficient to establish a genuine issue of material fact on this issue.

As a final example, Safety Marking contends that it cannot be held liable for the actions of its employees in allegedly creating a hostile work environment because it can establish the elements of the Faragher/Ellerth affirmative defense, which requires "that (1) the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir. 2006) (internal quotation marks and alteration omitted).  However, both Bakhit and Miles have submitted affidavits to the effect that numerous individuals of color who were also employed at Safety Marking told them that, based on their own or others' prior experiences, it would have been a terrible idea to attempt to make any kind of complaint about harassment, namely because doing so would not fix any problem—i.e., would be futile—and because it would even lead to their facing further harassment or being fired. See Bakhit Aff. ¶¶ 76–77; Miles Aff. ¶¶ 51, 53–57.  Absent any evidence that there it was unreasonable to believe these warnings, the court can only conclude that a reasonable jury could find that Bakhit and Miles did not unreasonably fail to take steps to redress the allegedly hostile work environment at Safety Marking.  Moreover, Bakhit's Affidavit reflects that he did make some complaints in the past, but that these resulted in, at best, no beneficial change.  See Bakhit Aff. ¶¶ 21–22, 27–29, 40.

In sum, because the court's review of the papers before it reveals genuine disputes as to material issues of fact that run across all of the plaintiffs' claims except Bakhit's retaliation claim (Count XII), the parties must submit these claims to a jury.  The Motions are **DENIED**.

**SO ORDERED**.

Dated this 1st day of July 2015 at New Haven, Connecticut.


/s/ Janet C. Hall                           
Janet C. Hall
United States District Judge